UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

JOHN PAIGE,
ELIZABETH PAIGE,

      Plaintiffs,

      v.                          Case No. 12-C-0601

WAUKESHA HEALTH SYSTEM, INC.
d/b/a Professional Receivables Management,

      Defendant.

MEMORANDUM DECISION REGARDING COURT'S MARCH 28, 3013
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS (DOC. 8)

John and Elizabeth Paige sue Waukesha Health System, Inc. for alleged violations of the Fair Debt Collection Practices Act (FDCPA) and the Wisconsin Consumer Act (WCA). The allegations concern two debt collection letters mailed to Elizabeth Paige and two debt collection letters mailed to John Paige. Also, the Paiges assert class claim for others in Wisconsin who were sent debt collection letters.

Waukesha Health moved to dismiss the entire case under Fed. R. Civ. P. 12(b)(1) or, alternatively, parts of this case under Fed. R. Civ. P. 12(b)(6). On March 28, 2013, the court granted the motion to dismiss as to Count III and denied the remainder of the motion. This memorandum explains that order.

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of this Court over the subject matter related in the complaint. *See* Fed. R. Civ. P. 12(b)(1). When considering a facial challenge to jurisdiction under Rule 12(b)(1) (that even if the allegations in the complaint are true there is no jurisdiction), the court considers only the allegations in the

complaint and assumes they are true. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). However, when considering a factual challenge to jurisdiction under Rule 12(b)(1) (when the complaint is formally sufficient but a party contends there is in fact no subject matter jurisdiction), the court may consider and weigh evidence regarding the matter. *Id.* at 444. When the court is put on notice that a jurisdictional allegation may be false, it "'is duty-bound to demand proof of its truth.'" *Id.* (quoting *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986)).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). However, enough facts must be set forth to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). The "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atl.*, 550 U.S. at 555-56, 569 n.14). When considering a Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The court does not consider evidence outside the pleadings unless the motion is converted to one under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

Under Fed. R. Civ. P. 12(b)(1) or 12(b)(6) the court may take judicial notice of matters of public record, including court records. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

The Paiges contend that Waukesha Health mailed a debt collection letter to Elizabeth Paige on June 30, 2011, and another to John Paige on January 6, 2012. Both letters included a statement that prejudgment interest was being assessed at five percent per year. Then, on April 11, 2012, Waukesha Health mailed a debt collection letter to John Paige regarding the same debt as in the January 6 letter but reflecting a balance amount that included five percent interest. Both of the letters to John Paige included a notice regarding validation of the debt. Finally, on May 9, 2012, Waukesha Health mailed a debt collection letter to Elizabeth Paige regarding a debt it said was owed to "PHCMA—700E."

The Paiges assert in Counts I, II, V, and VI that the statements about prejudgment interest in three of the letters and the inclusion of interest in the April 11 letter violate various provisions of the FDCPA and the WCA. Additionally, they maintain in Count III that the notice in the April 11 letter regarding validation of the debt violated the FDCPA. Finally, the Paiges charge in Count IV that Waukesha Health violated the FDCPA by not identifying the name of the creditor in the May 9 letter. The Paiges sue on behalf of themselves and all persons in Wisconsin who were sent a letter in the form represented by any of the above-described letters to collect a debt for personal, family or household purposes. (*See* Doc. 1 at 9.)

STANDING

First, Waukesha Health challenges the entire complaint, arguing that the Paiges lack standing to pursue these claims because a few weeks prior to filing this case they filed a

3

Chapter 7 bankruptcy petition. Thus, argues Waukesha Health, at the time the Paiges filed this case the claims were the property of the bankruptcy estate and administered by the bankruptcy trustee rather than the Paiges. Further, contends Waukesha Health, the trustee in bankruptcy cannot be a proper class representative under *Dechert v. Cadle Co.*, 333 F.3d 801 (7th Cir. 2003).

The concept of standing includes both constitutional and prudential standing concerns. A party must have a personal stake in the case and controversy, and the person asserting standing bears the burden of establishing it. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142, 1149 (2009).

Constitutional standing requires that a party "present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733, 128 S. Ct. 2759, 2768 (2008); *accord United States v. Windsor*, No. 12-307, 570 U.S. \_\_\_, \_\_\_ S. Ct. \_\_\_, 2013 WL 3196928, at *7 (June 26, 2013). Constitutional standing must exist at the time the case is filed and persist at all points subsequent until final decision. *Hollingsworth v. Perry*, No. 12-144, 570 U.S. \_\_\_, \_\_\_ S. Ct. \_\_\_, 2013 WL 3196927, at *6 (June 26, 2013); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S. Ct. 1055, 1068 (1997). Here, the Paiges have constitutional standing. They present actual, concrete and particularized injuries (violations of the FDCPA and WCA from four debt collection letters), which they say occurred *to them* because of the conduct of Waukesha Health, and which can be redressed by damages under the referenced statutes.

Rules of prudential standing are more "flexible" and are designed to protect federal courts from deciding abstract questions when other governmental branches may be more

4

appropriate. *Windsor*, 2013 WL 3196928, at *7, *9. Prudential standing exists when the litigant asserts the rights and interests of himself rather than a third party, presents a claim falling within the zone of interests protected by the specific law invoked, and advances more than abstract questions of wide public significance amounting to grievances better handled by the legislative or executive branch. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12, 124 S. Ct. 2301, 2309 (2004) Here, Waukesha Health does not contend that the Paiges' claims fall outside the zone of interests protected by the FDCPA or WCA or that the Paiges present abstract questions. Instead, Waukesha Health focuses its argument on whether the Paiges assert their own rights or the rights of a third-party, i.e., the bankruptcy estate. Such a personal interest is required not only by the rules of prudential standing but also by Fed. R. Civ. P. 17(a)(1), which requires that an action "be prosecuted in the name of the real party in interest." However, the court may not dismiss an action for violation of Rule 17(a)(1) until a reasonable time has been given for the real party in interest to join the action. Fed. R. Civ. P. 17(a)(3).

The Paiges filed this case on June 12, 2012. The bankruptcy court docket in case number 12-28089 (Bankr. E.D. Wis.) shows that shortly prior to that date, on May 25, 2012, the Paiges filed a Chapter 7 voluntary petition. In Schedule B attached to their petition, listing personal property, the Paiges included as a community asset a "[p]otential claim against Professional Receivables Management for violations of the FDCPA and WCA," valued at $1000. They listed that potential claim, similarly valued at $1000, in the exemptions on Schedule C, and pointed to 11 U.S.C. § 522(d)(5) as the basis for the exemption. *In re Paige*, Voluntary Petition, scheds. B, C (Bankr. E.D. Wis. filed May 25, 2012). The Paiges filed amended schedules on July 24, 2012, in which they altered

5

identification of the claim in Schedule B to: "Potential claim against Waukesha Health System, Inc. d/b/a Professional Receivables Management for violations of the FDCPA and WCA." The amount claimed as a community asset remained at $1000. Again they listed the claim with the same value of $1000 as exempt property on amended Schedule C. *In re Paige*, am. scheds. B, C (Bankr. E.D. Wis. filed July 24, 2012).

On August 6, 2012, the Chapter 7 trustee reported that he had made diligent inquiry in the financial affairs of the Paiges and that there was no property available for distribution above that exempted by law. *In re Paige*, docket (Bankr. E.D. Wis. entered Aug. 6, 2012). On September 11, 2012, the bankruptcy court granted the Paiges a discharge. *In re Paige*, discharge of debtor (Bankr. E.D. Wis. filed Sept. 11, 2012).

Upon the filing of a Chapter 7 case, all of a debtor's property becomes property of the bankruptcy estate. 11 U.S.C. § 541(a); *Schwab v. Reilly*, 560 U.S. ___, 130 S. Ct. 2652, 2657 (2010); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642, 112 S. Ct. 1644, 1647 (1992). However, the Bankruptcy Code permits the debtor to prevent the distribution of certain property to creditors by claiming it as exempt. *Taylor*, 503 U.S. at 642; *see* 11 U.S.C. § 522. Exempted property will be excluded from the bankruptcy estate unless a party in interest timely objects. *Schwab*, 130 S. Ct. at 2657; *see* Fed. R. Bankr. P. 4003(b)(1) (providing for thirty days following the creditors' meeting or an amendment to the list of exemptions in which interested parties may file objections). Absent an objection, property claimed exempt *is* exempt. *Taylor*, 503 U.S. 638, 641-42 (1992); *see* 11 U.S.C. § 522(*l*).

A debtor's cause of action for violations of consumer protection statutes constitutes "property" for purposes of the bankruptcy estate and exemptions. *In re Smith*, 640 F.2d

6

888, 889-91 (7th Cir. 1981). If a debtor's cause of action passes to the estate and is not exempted, the trustee of the bankruptcy estate has the capacity to sue and be sued as the administrator of the Chapter 7 estate, the only real party in interest. *See Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004); *Puello v. Citifinancial Servs., Inc.*, No. 08-10417-MLW, 2010 WL 1541503, at *1 (D. Mass. Apr. 16, 2010); *In re Hall*, 453 B.R. 22, 26 (Bankr. D. Mass. 2011). When a debtor claims only a portion of a claim as an exemption, the debtor's interest is only that portion, and any recovery on the claim exceeding that amount remains property of the bankruptcy estate. *In re Hall*, 435 B.R. at 31. The trustee is considered the real party in interest as to the excess. *See id.*

Section 522(d)(5), which the Paiges cited as the basis for their exemption, is a "wildcard" exemption up to the "debtor's aggregate interest in any property, not to exceed" a stated amount, *Schwab*, 130 S. Ct. at 2657—here higher than $1000. Section 522(d)(5) defines "property" not as the asset itself but rather as the debtor's "interest" in that asset up to the specified dollar amount. *Schwab*, 130 S. Ct. at 2661-62. An exemption under § 522(d)(5) is the debtor's attempt to reclaim his or her *interest* in those assets to the creditors' detriment. *Schwab*, 130 S. Ct. at 2663-64. When a debtor exempts such an interest worth a specific amount, "[i]f an interested party does not object to the claimed interest by the time the Rule 4003 period expires, title to the asset will remain with the estate pursuant to § 541, and the debtor will be guaranteed a payment in the dollar amount of the exemption." *Id.* at 2667.

Until the time for objection by the trustee expires or the exemption is overruled by the court, the property remains in the estate. *Bucchino v. Wells Fargo Bank, N.A. (In re Bucchino*), 439 B.R. 761, 770, 772 (Bankr. D.N.M. 2010). However, at least one court has

7

deemed the debtor to have an "inchoate interest" (meaning not fully developed or matured) in the property to the extent of the claimed exemption pending allowance or disallowance. *Id.* at 772. The funds belong to the bankruptcy estate subject to the claim of exemption. *Id.*

Waukesha Health contends that because the Paiges exempted only $1000 of their claims, even though they may have $4000 or more alleged as individual damages, when they filed this case the trustee was actually the real party in interest. In other words, says Waukesha Health, the Paiges asserted the claims of a third party.

The court finds that at the time they filed this case the Paiges maintained *some* interest in their FDCPA and WCA claims. Although they did not exempt the full amount of the lawsuit, such that the excess remained in the estate and was under the control of the trustee rather than the Paiges, they exempted $1000, and that amount was sufficient to give them prudential standing. As discussed in *Schwab*, as to any § 522(d)(5) exemption, whether for full or partial market value of the asset, title to the asset remains with the estate pursuant to ii U.S.C. § 541, but the debtor will be guaranteed a payment in the dollar amount of the exemption. 130 S. Ct. at 2667. Thus, the debtor has an interest in such payment and can pursue a claim for that payment as his or her own cause. Even though at the time the Paiges filed this case the time for objections had not passed, the Paiges nevertheless maintained an inchoate interest in this case, which was enough to bring suit as a real party in interest. From the moment they filed their Chapter 7 case, they were attempting to reclaim $1000 of this action as an exemption from creditors.

That the excess value of the Paiges FDCPA and WCA claims above the $1000 exemption may have passed to the bankruptcy estate does not alter the Paiges' standing

8

regarding the $1000 interest. In *Morlan v. Universal Guaranty Life Insurance Company*, 298 F.3d 609, 614-16 (7th Cir. 2002), the court found that a debtor maintained an unassignable interest in pension benefits and future welfare benefits, though the trustee in bankruptcy could have taken "over at least a chunk, for all we know the biggest chunk," of Morlan's claim for past, monetized benefits. Moreover, even as to the excess, the Paiges may hold enough of an interest to satisfy standing requirements. Even if the excess may belong to the debtors estate, the possibility that the trustee or creditors could seek to reopen the bankruptcy case to pursue the claim does not negate the Paiges' standing. As the Seventh Circuit stated regarding Morlan's ERISA claim for past benefits,

> [t]hat the creditors might be able to reopen the bankruptcy proceeding and wrest a piece of Morlan's ERISA claim from him placed a cloud over his title, but standing does not require a perfectly clear title to the claim sued upon. . . . [T]he probability falls so far short of certainty as not to disturb our conclusion that Morlan had a sufficient interest in the assignable portion of the claim to have standing to sue to enforce it. The defendants' argument amounts to saying that they, because Morlan's creditors might still try to take away Morlan's claim from him, cannot be sued; that they, because the trustee or the bankruptcy judge may have dropped the ball, are to get off scot free. We cannot see the sense of that.

298 F.3d at 620-21 (citations omitted).

Thus, standing remains. Moreover, nothing appears to have divested the Paiges of their $1000 interest in the pending claims since the filing of this case.[1]

## COUNTS I, II, V, VI

---

[1] Although at one time last summer the bankruptcy trustee could have sought to be included as a plaintiff or Waukesha Health could have argued that the trustee was a necessary party, that is no longer the situation. On August 6, 2012, the trustee indicated that he had made diligent inquiry into the estate property, found none available for distribution, and asked to be discharged from further duties. On September 11, 2012, the trustee was discharged from his duties and the debtors' debts were discharged. Thus, whether or not the excess of the Paiges' claims over their $1000 interest is theirs or property of their bankruptcy estate, *see Parker*, 365 F.3d at 1272, *Morlan*, 298 F.3d at 618-21, no trustee is available for inclusion here. The parties have not argued, and the court in this decision does not address, whether the excess of the Paiges' claims over the $1000 remain in the estate or were abandoned and revested in the Paiges.

9

Alternatively, Waukesha Health seeks dismissal of four counts based on the following language in the debt collection letters: "As of the date of this notice pre-judgment interest is being assessed at a rate of 5% per year, on the outstanding balance of the claim, until paid in full. {Per Wisconsin statute 138.04}" The Paiges allege that this statement was false, unfair and unconscionable, an attempt to collect money that Waukesha Health knew it had no right to collect, and a threat of collection without initiating the steps necessary to trigger prejudgment interest. On the other hand, Waukesha Health argues that these claims fail because the statement in the letters was accurate: the amounts mentioned were liquidated and Wisconsin law permits five percent interest on unpaid liquidated amounts from the moment demand is made.

> Wisconsin Statute § 138.04 provides that
>
> [t]he rate of interest upon the loan or forbearance of any money, goods or things in action shall be $5 upon the $100 for one year and according to that rate for a greater or less sum or for a longer or shorter time; but parties may contract for the payment and receipt of a rate of interest not exceeding the rate allowed in [various statutes], in which case such rate shall be clearly expressed in writing.

The statute does not require an award of prejudgment interest on liquidated damages; it "is not an authorization for, but merely the measure of, interest to be awarded on liquidated claims." *Erickson by Wightman v. Gundersen*, 183 Wis. 2d 106, 123 n.8, 515 N.W.2d 293, 301 n.8 (Ct. App. 1994). Instead, the rule that a party may recover prejudgment interest on damages that are either liquidated or determinable by a "reasonably certain standard of measurement" derives from Wisconsin common law. *Beacon Bowl, Inc. v. Wis. Elec. Power Co.*, 176 Wis. 2d 740, 776-77, 501 N.W.2d 788, 802 (1993); *Erickson by Wightman*, 183 Wis. 2d at 121, 123. The statutory five percent rate has been applied to statements

10

of account following purchases on credit, where the seller sent the customer periodic statements of the amount owed. *Severson Agri-Serv., Inc. v. Lander*, 172 Wis. 2d 269, 493 N.W.2d 230 (Ct. App. 1992).

To recover prejudgment interest there must be a "fixed and determinate amount which could have been tendered and interest thereby stopped." *De Toro v. DI-LA-CH, Inc.*, 31 Wis. 2d 29, 34, 142 N.W.2d 192, 195 (1966). For example, when work is performed under a contract and the fee for services is not disputed, prejudgment interest is allowed. *Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶ 48, 265 Wis. 2d 703, ¶ 48, 666 N.W.2d 38, ¶ 48. However, if a dispute exists as to the method of calculating the amount owed, prejudgment interest is not appropriate. *Id.* ¶ 47.

Interest on a liquidated claim begins to run from the time payment is due under the terms of a contract or, if no such time is specified, then from the time demand is made or, if no demand was made, from the commencement of suit. *Estreen v. Bluhm,* 79 Wis. 2d 142, 158-59, 255 N.W.2d 473, 482 (1977). In *De Toro*, for instance, the Supreme Court of Wisconsin found that an initial complaint that demanded $5043.40, but did not indicate how the amount was determined, did not demand a liquidated amount. Not until a bill of particulars containing a detailed, itemized account of the amounts claimed was served was the amount deemed sufficiently liquidated by the court. 31 Wis. 2d at 34-35.

Wisconsin cases suggest, as the Paiges argue, that absent a contractual agreement prejudgment interest cannot be automatically added by a creditor but instead must await a court judgment; thus, Waukesha Health's representation that such interest "is being assessed" was false. According to the Supreme Court of Wisconsin, "[t]he allowance of interest, in cases of equity, is a matter within the discretion of the court." *Estreen*, 79 Wis.

11

2d at 156.[2] The Wisconsin Court of Appeals has indicated that "whether such interest should be awarded in a given case is for the court to decide." *Erickson by Wightman*, 183 Wis. 2d at 123. Further, the Supreme Court of Wisconsin has called such interest "preverdict interest," and discussed how courts do not grant it when the existence of multiple defendants precludes any single defendant from knowing the precise amount of his liability. *Beacon Bowl*, 176 Wis. 2d at 802-03. The *Beacon Bowl* court explained that Wisconsin courts in applying the common-law rule have "staked out a middle ground between two competing policies"—that the interest is a penalty for wrongfully withholding damages versus an element of compensation for time value of money. *Id.* at 802; *see also Teff*, 265 Wis. 2d ¶ 43. All of this discussion in case law presumes that common-law prejudgment interest is not included automatically but instead is something the courts award.

Waukesha Health contends that Wis. Admin. Code DFI-BKG. § 74.11(1), standing alone, removes doubt concerning the propriety of its assessment of interest in the absence of a judgment. According to Waukesha Health, the provision contemplates that a debt collector can compute interest on outstanding accounts. (Def.'s Reply Br. at 7.) Section DFI-BKG. § 74.11(1) addresses "computation of interest and other charges" and provides that "[i]nterest computed by the licensee on accounts where there is no definite amount contracted for should be limited to the amount permitted under §§ 138.04 and 138.05, Stats." But this provision does merely what § 138.05 does: it sets the rate for interest. By its terms it does not authorize the assessment of interest in the first place.

---

[2]*Estreen* involved a claim for specific performance, and judgment included payment of a remainder due for closing of a real estate deal.

12

In *Veach v. Sheeks*, 316 F.3d 690 (7th Cir. 2003), a debt collection letter incorrectly stated the amount of a debt, violating the FDCPA, when it set forth an amount that included treble damages that had not yet been awarded by a court. *Id.* at 692. According to the Seventh Circuit, the FDCPA's "amount of the debt" provision "is designed to inform the debtor . . . of what the *obligation* is, *not* what the final, worst-case scenario *could* be." As the debtor could not be held liable for treble damages until a court issued a judgment, such damages were not part of the debt itself and the letter misrepresented the actual amount. Thus, here, if the statement in the letter was based on the common-law rule, it may be that the statement was false.

Nevertheless, the Seventh Circuit has noted that the definition of "debt" under the FDCPA means an "obligation or alleged obligation . . . whether or not such obligation has been reduced to judgment." *Id.* at 693 (quoting 15 U.S.C. § 1692a(5)). Further, the court acknowledged instances in which the amount of a debt varies from day to day because of interest or late charges, and the court suggested "safe harbor" language for debt collectors in such instances. *Id.* Thus, for instance, if the statement in the letter was based on a contractual provision the interest could be permissible.

Here, not enough is known about the basis for interest. Thus, dismissal at the Rule 12 stage would be improper. First, the court has nothing on which to find that an award of interest was permitted pursuant to a contract of the parties versus under the common law. Second, the court has no basis on which to find that the dollar amounts set forth in the letters attached to the complaint stemmed from liquidated debts. At the present stage this court knows nothing about the underlying debts and any basis for the amounts. Those

13

facts may be the subject of discovery and motions for summary judgment. But dismissal of Counts I, II, IV, and V upon a Rule 12(b)(6) motion must be denied.

## COUNT III

Finally, Waukesha Health seeks dismissal of Count III, which concerns a validation notice in one of the letters sent to John Paige.

Title 15 U.S.C. § 1692g(a) provides that within the initial communication to a consumer, or within five days after that initial communication, a debt collector must send the consumer a notice (often referred to as "validation notice") containing (1) the amount of the debt, (2) the name of the creditor to whom the debt is owed, (3) a statement that unless the consumer disputes the validity of the debt within thirty days the debt will be assumed to be valid, (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt is disputed the debt collector will obtain verification of the debt or judgment and mail a copy to the consumer, and (5) a statement that upon the consumer's written request within the thirty-day period the debt collector will provide the consumer with the name and address of the original creditor.

As alleged in the complaint, on January 6, 2012, Waukesha Health mailed a debt collection letter to John Paige concerning a debt owed to "Oconomowoc Memorial Hosp" in the amount of $182.90. Waukesha Health mailed a second debt collection letter to John Paige concerning this same debt on April 11, 2012. *Both* letters contained a validation notice containing items (3), (4), and (5) above. (Doc. 1 ¶¶ 17-25.) John Paige asserts that the validation notice in the second letter was false, contradictory, and confusing, in violation of 15 U.S.C. §§ 1692e and 1692e(10), because it said he could exercise certain rights within thirty days, but the thirty-day time period required by the FDCPA had expired (on or

14

about February 5, 2012).³ In other words, the statement that the Paiges still had time to exercise their rights was false because under the FDCPA they no longer had the right to dispute the debt.

In analyzing whether a collection letter violates the FDCPA, the court uses the "unsophisticated consumer" standard. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005). Several courts have found that a second validation notice, sent after the thirty-day period following the first validation notice expired, neither confuses the consumer, discourages the consumer from exercising his statutory right to dispute the validity of the debt within the thirty-day period, nor constitutes a false or misleading representation in connection with the collection of the debt. Thus, the second validation notice caused no § 1692e violation. *Young v. G.L.A. Collection Co.*, No. 1:11-CV-489-WTL-MJD, 2011 WL 6016650, at *2-*3 (S.D. Ind. Dec. 1, 2011); *Arend v. Total Recovery Servs., Inc.*, No. 05-CV-3064, 2006 WL 2064977, at *3 (E.D.N.Y. July 24, 2006); *Brenker v. Creditors Interchange, Inc.*, No. 03 Civ. 6500 LTS DFE, 2004 WL 594502 (S.D.N.Y. Mar. 25, 2004); *DiRosa v. North Shore Agency, Inc.*, 56 F. Supp. 2d 1039 (N.D. Ill. 1999). The second validation notice, after the thirty-day period required by statute expired, neither affected the validity of the first validation notice nor hampered the consumer's exercise of rights during the statutory thirty-day period; thus, the consumer was not adversely affected. The FDCPA does not prevent a debt collector from giving the consumer additional chances or time to dispute the debt, even if the statute does not require it. *Brenker*, 2004 WL

---

³John Paige asserts that the validation notice in the second letter was false or contradictory under § 1692e. He does *not* assert that the second validation notice violated § 1692g(b), which prohibits collection activities during the thirty-day period that "overshadow or [are] inconsistent with the disclosure of the consumer's right to dispute the debt." § 1692g(b). Because the second collection letter was sent after the thirty-day period expired § 1692g(b) would seem not to apply.

15

594502, at *2. "It is neither deceitful nor false, even to the least sophisticated consumer, for Defendant to offer Plaintiff additional time to exercise his right to obtain validation of the debt." *Arend*, 2006 WL 2064977, at *3. Here, going beyond the statutory minimum did not create a violation.

The Paiges contend that all of these cases were incorrectly decided, but they provide no authority directly on point in their favor. Instead, they cite Truth in Lending Act (TILA) cases, which are easily distinguished. The cancelation notices in the TILA cases were given contemporaneously and contained contradictory time periods. Here, there is no allegation that any second notice was given in the thirty-day period or contradicted the length or obligations during that period. This court agrees with *Young*, *Arend*, *Brenker*, and *DiRosa*. Thus, Count III has been dismissed.

## CONCLUSION

For the reasons set forth above, Count III was dismissed and Waukesha Health's motion to dismiss was denied as to the other counts. Waukesha Health's time for answering the complaint runs from the date of this memorandum.

Dated at Milwaukee, Wisconsin, this 11th day of July, 2013.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE

16